Cite as 2024 Ark. App. 548

# ARKANSAS COURT OF APPEALS
## DIVISION IV
### No. CV-23-711

| | |
|---|---|
| CONAGRA PACKAGED FOODS, LLC; AND BROADSPIRE SERVICES, INC. **APPELLANTS** | Opinion Delivered November 6, 2024 |
| | APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION |
| V. | [NO. H201972] |
| JAMES BEAUCHAMP **APPELLEE** | AFFIRMED |

## RITA W. GRUBER, Judge

On January 4, 2022, James Beauchamp was moving a pallet of cardboard boxes during his work for ConAgra. He tripped on some strapping bands and fell, hitting his left knee and left hip on the concrete floor. He initially received care from ConAgra after his fall. Physician's assistant J. Daniel Nicholas returned him to work and restricted him to no weight bearing on his left leg; also, he was to have seated work and to use crutches as needed. When Mr. Beauchamp continued to complain of left-hip pain at his January 11 return visit, Mr. Nicholas again recommended restricted duty and no weight bearing on his left leg. Mr. Beauchamp went to his own doctor soon afterward with complaints of a right-hip injury as well. Respondents, ConAgra and its insurer, did not accept compensability beyond the left-hip injury, so Mr. Beauchamp requested a hearing before an administrative law judge (ALJ).

The ALJ acknowledged the parties' agreement on the issues to be litigated. A primary issue was whether there was a compensable injury on January 4, 2022, "regarding the right hip and pelvis." Evidence at the hearing included Mr. Beauchamp's testimony and the medical records. In an amended opinion, the ALJ ruled as follows:

> *The issue in this case is if claimant's right-hip injury is related to his admittedly compensable injury to his left hip which occurred in a fall on January 4, 2022.* While claimant's testimony was somewhat confusing on the onset of his right hip pain, in reviewing the entire record, *I find that he has shown by a preponderance of the evidence that his right-hip injury was incurred during that fall.*
>
> . . . .
>
> *I find claimant has proven by a preponderance of the evidence his right hip and pelvis injury is compensable.*

(Emphasis added.) The ALJ awarded Mr. Beauchamp reasonably necessary medical treatment for his injuries and awarded temporary total-disability benefits. Respondents appealed to the Arkansas Workers' Compensation Commission (Commission).

The Commission affirmed the ALJ's opinion as modified, reversing the finding that the right hip and pelvic injury occurred on the date of the fall. The Commission found instead that the right-hip and pelvis injury was "a natural consequence" of his compensable left-hip injury. Additionally, Mr. Beauchamp was awarded temporary total-disability benefits from February 15, 2022, until a date yet to be determined. Respondents appeal, contending that the Commission (1) erred in deciding the case on the basis of an issue that Mr. Beauchamp did not argue or plead and (2) arbitrarily ignored evidence that the alleged right-hip problems were not compensable. We affirm.

In its opinion, the Commission noted its duty "to conduct its own fact-finding independent of that done by the administrative law judge," *see Crawford v. Pace Indus.*, 55 Ark. App. 60, 929 S.W.2d 727 (1996), and it discussed this statutory definition of compensable injury:

> An accidental injury causing internal or external physical harm to the body . . . arising out of and in the course of employment and which requires medical services or results in disability or death. An injury is "accidental" only if it is caused by a specific incident and is identifiable by time and place of occurrence[.]

Ark. Code Ann. § 11-9-102(4)(A)(i) (Supp. 2023). The Commission further found:

> [T]he claimant did not prove by a preponderance of the evidence that he sustained a "compensable injury" to his right hip or pelvis. The claimant did not prove that he sustained an accidental injury causing internal or external physical harm to his right hip or pelvis. The claimant did not prove that he sustained an injury to his right hip or pelvis which arose out of and in the course of employment, required medical services, or resulted in disability. The claimant did not prove that he sustained an injury to his right hip or pelvis which was caused by a specific incident or was identifiable by time and place of occurrence on or about January 4, 2022.

Accordingly, the Commission did not affirm the ALJ's finding that Mr. Beauchamp proved he "suffered a compensable injury to his right hip and pelvis on January 5, 2022."

The Commission noted, however, that the employer is responsible for any natural consequence flowing from a primary injury that has arisen out of and in the course of employment. *Nichols v. Omaha Sch. Dist.*, 2010 Ark. App. 194, at 5, 374 S.W.3d 148, 151. The Commission recognized that it is the employee's burden to establish by a preponderance of the evidence a causal connection between the injury and the consequences of such and that whether there is a causal connection is a fact question for the Commission. *Int'l Paper*

*Co. v. Steward*, 2024 Ark. App. 465, at 9, ___ S.W.3d ___, ___; *Jeter v. B.R. McGinty Mechanical*¸ 62 Ark. App. 53, 968 S.W.2d 645 (1998).

The Commission found that the parties implicitly stipulated that Mr. Beauchamp proved he sustained a compensable injury to his left hip on January 4, 2022. Next, it found that Mr. Beauchamp proved his subsequent right-hip difficulties were a natural consequence flowing from the compensable left-hip injury. The Commission rejected respondents' argument that Mr. Beauchamp "did not establish a causal link between his alleged right-hip injury and the compensable injury to his left hip."

Having summarized the proceedings below, we turn to the points on appeal.

## I. *Whether the Commission Erred in Basing Its Decision on an Issue that Mr. Beauchamp Did Not Argue or Plead*

Respondents contend that the Commission, by interjecting the theory that Mr. Beauchamp's condition was a natural consequence of his compensable left-hip injury, committed procedural errors that stripped their ability to adequately prepare and defend their case. They cite criminal cases and dependency-neglect cases as support of their contention. *E.g.*, *Dornan v. Ark. Dep't of Hum. Servs.*, 2014 Ark. App. 355, at 16 ("Due process demands that a parent be notified of the grounds that may constitute a basis for termination; at a minimum, it requires notice reasonably calculated to afford a natural parent the opportunity to be heard prior to termination of his or her parental rights."); *Ilo v. State*, 350 Ark. 138, 152, 85 S.W.3d 542, 550–51 (2002) ("[T]his court will not make appellant's argument for him nor raise an issue *sua sponte* unless it involves this court's jurisdiction to

hear the case."). Appellants make no convincing argument that such cases apply when a party appeals a decision to the Arkansas Workers' Compensation Commission.

Respondents complain that neither Mr. Beauchamp nor the ALJ developed the legal and factual issues on which the Commission based its decision. They cite language from the Commission's rules: "All legal and factual issues should be developed at the hearing before the Administrative Law Judge or single Commissioner. The Commission may refuse to consider issues not raised below." 099.25(b) Ark. Workers' Compensation Law & Rules Annotated (LexisNexis 2023).[1] We note additional language that parties appealing to the full Commission "shall specify in the notice of appeal or cross-appeal all issues to be presented." *Id.* Rule 099.25(a). Here, respondents' notice of appeal to the Commission specified their belief that the ALJ's original and amended opinions were "contrary to the law and facts."

The Commission has authority and a duty "to render anew findings relevant to the claim before it." *Pharmerica v. Seratt*, 103 Ark. App. 9, 14, 285 S.W.3d 699, 703 (2008). In *Pharmerica*, we rejected the employer's allegation that the Commission's award of benefits for an occupational disease was an error of law where only a specific-incident injury was to be litigated. We noted that Rule 25, which defines the scope of review from the ALJ to the Commission, does not prohibit the Commission from reviewing issues not appealed from

---

[1]Mr. Beauchamp cites our unpublished opinion *Allen v. Sparks Reg'l Med. Ctr.*, No. CA90-341, 1991 Ark. App. LEXIS 220, at 5–6. Respondents correctly note that opinions issued before July 1, 2009, and not designated for publication "shall not be cited, quoted, or referred to . . . in any argument, brief, or other materials presented to any court" (with exceptions not applicable to the present case). Ark. Sup. Ct. R. 5-2.

or not raised at the ALJ level if it chooses to do so. *Id.* at 13, 285 S.W.3d at 703. An administrative agency's interpretation of its own rules will not be overturned unless it is clearly wrong. *Cloverleaf Express v. Fouts*, 91 Ark. App. 4, 15, 207 S.W.3d 576, 582 (2005).

Respondents contend that the "posture" of Mr. Beauchamp's claim made it inappropriate for the Commission to interject a new issue and argument on behalf of the claimant, who gave no indication that compensability of a natural-consequence injury was in question. They argue that *Pharmerica* is distinguishable from the present case because there, the respondent was put on notice of the alternative argument when the claimant's attorney specifically referenced it in his opening statement. We do not view *Pharmerica* as mandating that a claimant must mention an alternate theory before the Commission can consider a claim de novo on appeal and categorize the injury differently from the way it was presented to the ALJ.

We agree with Mr. Beauchamp that respondents' argument ignores the availability of evidence before the Commission that justified its consideration of the natural-consequence theory. When deciding any issue, ALJs and the Commission shall determine on the basis of the record as a whole whether the party having the burden of proof on the issue has established it by a preponderance of the evidence. Ark. Code Ann. § 11-9-704(c)(2) (Repl. 2012).

Mr. Beauchamp contended that he was entitled to treatment for his right-hip and pelvic fractures. The legal and factual issues regarding compensability of this injury were developed at the hearing before the ALJ. There was no requirement that Mr. Beauchamp

specifically refer to a "natural consequence" so that the Commission could consider the doctrine in its de novo review. For the reasons discussed above, we find no merit to respondents' claim that the Commission erred by basing its decision on an issue that Mr. Beauchamp neither argued nor pled.

II. *Whether the Commission Arbitrarily Ignored Evidence that Mr. Beauchamp's Alleged Right-Hip Problems were Not Compensable*

Respondents argue that Mr. Beauchamp underwent "numerous clinical examinations at the beginning of the claim that did not reveal any evidence of a right sided injury." They complain that the incident report, completed on the day of the fall, listed only "left hip and knee" as injured parts of the body; physician's assistant J. Daniel Nicholas's January 4, 2022 report states that Mr. Beauchamp complained of left-hip pain, and his right hip appeared stable with normal range of motion and an absence of bruising, swelling or pain; and January 11 and 18 examinations illustrated complaints of left hip only, with examination of a normal right hip. Respondents argue that medical professionals first documented a contusion on the right hip when Mr. Beauchamp started mentioning problems on the right side, which they characterize as "too much of a coincidence" not to indicate a new, unrelated condition. Finally, noting that Mr. Beauchamp gave different versions of when and how his right-hip problems started, they argue that he "did not provide credible testimony" establishing that his right hip condition was related to or arose from his work injury.

It is well-settled that questions concerning witnesses' credibility and the weight to be given their testimony are within the exclusive province of the Commission. *Ellison v. Therma*

7

*Tru*, 71 Ark. App. 410, 417, 30 S.W.3d 769, 774 (2000). It is also within the Commission's province to reconcile conflicting evidence and to determine the true facts. *Id.* The Commission is not required to believe the testimony of the claimant or any other witness, and it may accept and translate into findings of fact only the portions of testimony that it deems worthy of belief. *Id.* at 417–18. The Commission has the duty to weigh all evidence, including the medical evidence, and has the authority to accept or reject medical opinions. *Roberson v. Waste Mgmt.*, 58 Ark. App. 11, 944 S.W.2d 858 (1997); *Poulan Weed Eater v. Marshall*, 79 Ark. App. 129, 84 S.W.3d 878 (2002).

The Commission found that Mr. Beauchamp was a credible witness, specifically noting his agreement under cross-examination that he began suffering from right-hip pain approximately three weeks after the compensable left-hip injury.[2] It noted the medical records of February 2022 examinations:

> The claimant informed a physical therapist no later than February 1, 2022 that his right hip was hurting. J. Daniel Nicholas noted on February 8, 2022 that the claimant "has been having severe pain in his right hip. . . . He has developed severe right hip pain with no specific injury." Mr. Nicholas opined on February 8, 2022, "The cause of his right hip pain is unclear. The only way it could be related to his original injury is if it was caused by overcompensation when using crutches for his left leg." Such a notation by a treating health provider is evidence demonstrating that the claimant's right hip complaints were a natural consequence of the compensable left hip injury.

---

[2]The record shows that he testified that it was when he "started feeling pain all the way across."

Additionally, the Commission wrote that on February 15, 2022, Dr. Mark Allard addressed the cause of Mr. Beauchamp's right-hip symptoms: "It is my medical opinion that this is likely due to overuse 2 weeks ago [emphasis supplied] and is not directly related to his work-related injury from 6 weeks ago." It also noted medical records from other medical doctors:

> Dr. O'Connell stated on February 23, 2022, "His pain seems to be related to overcompensating with the R hip while using crutches." An MRI of the claimant's right hip on April 13, 2022 showed several abnormalities including a 'fracture of the right sacral ala." These diagnostic abnormalities where not shown to be present before the January 4, 2022 compensable injury to the claimant's left hip. We find that these abnormalities were additional evidence demonstrating that the claimant's right hip difficulties were a natural consequence of the compensable injury occurring January 4, 2022. Dr. Coker reported on May 1, 2022, "Impression is ramus fractures on the left after a fall at work and a right sacral fractures." Dr. Dougherty opined on August 3, 2022, "He was seen today to discuss his CT results for the pelvis. The CT showed a left superior/inferior pubic ramus fracture and a right fracture of the aspect sacrum. AL [sic] of these fractures *are directly related to his fall at work* [emphasis supplied]."

On this evidence, the Commission found that Mr. Beauchamp proved that his "right hip and pelvis difficulties" were a natural consequence of the January 4, 2022 compensable injury to his left hip.

When reviewing a decision of the Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings and affirm its decision if substantial evidence supports it. *Patterson v. Ark. Dep't of Health*, 70 Ark. App. 182, 188, 15 S.W.3d 701, 706 (2000). Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion *Id.* The

9

Commission's decision will not be reversed unless it is clear that fair-minded persons could not have reached the same conclusions if presented with the same facts. *Id.*

We note again that the Commission reviews an ALJ's decision de novo, and it is the duty of the Commission to conduct its own fact-finding independent of that done by the ALJ. *Crawford v. Pace Indus.*, 55 Ark. App. 60, 65, 929 S.W.2d 727, 729–30 (1996). It was within the realm of the Commission to give great weight to particular parts of the medical record and to find that Mr. Beauchamp credibly testified that his right-hip problems began approximately three weeks after his fall. We agree with Mr. Beauchamp that there is no requirement that substantial evidence come only from his early clinical evaluations, and the fact that he initially struggled with a left-hip injury and that his right-hip injury was not identified until later does not automatically suggest a lack of a causal connection between the two. As summarized by the Commission, he reported right-hip pain within the first month of treatment, Dr. Allard recommended an MRI for further evaluation of his right hip only a month after the fall, and the MRI did not occur until more than four months after the fall.

The evidence as summarized above constitutes substantial evidence supporting the Commission's determination that the right-hip and pelvic problems were a natural consequence of the compensable left-hip injury. We hold that substantial evidence supports the Commission's decision.

Affirmed.

BARRETT and MURPHY, JJ., agree.

10

*Worley, Wood & Parrish, P.A.*, by: *Jarrod S. Parrish*, for appellants.

*Tolley & Brooks, P.A.*, by: *Evelyn E. Brooks*, for appellee.